IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES DURRETT, et. al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:06-cv-179 |
| | § | |
| HARRIS PAULEY, et. al., | § | |
|     Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ARGENT MORTGAGE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Before the court are the following:

1. Defendant's Motion for Summary Judgment (de # 79);

2. Plaintiffs' Response to Defendant's Motion for Summary Judgment (de # 87);

3. Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (de # 88); and

4. Plaintiffs' Sur-reply to Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (de # 89).

Having considered the Defendant's Motion and the briefing responsive thereto, the court is of the opinion that the Motion should be GRANTED.

**I. BACKGROUND**

James and Ingrid Durrett, Anthony Johnson, Latosha Ford-Johnson, Ellis and Cyndi Jefferson, Byron and Tameika Linnear, and Cynthia Burton (collectively "Plaintiffs") are the plaintiffs in this fraud action. The Plaintiffs allege fraud against Michael Cary, Harris Pauley, Limited, Argent Mortgage Company, LLC, David Ferwerda, William Heublien, and Edward St. Hill. Plaintiffs also alleged Wachovia Bank and Wells Fargo Bank to have been involved with the fraud,

but those defendants were dismissed as a result of this court's order signed on March 21, 2007.

In 2004 and 2005, each of the Plaintiffs rented houses under lease arrangements with Harris Pauley, Limited ("HP"), a company wholly owned by Michael Cary. (Pl.'s Resp. 3.) Each lease was for a one-year term. HP allegedly represented that, upon completion of the lease term, each lessee would have the option to buy the house and that the rental payments would be credited towards the purchase price. (*Id*. at 4.) HP also allegedly represented that it owned the properties free and clear of encumbrances. However, none of the Plaintiffs ever had a chance to purchase any of the houses, and their homes were foreclosed upon by the holders of the notes secured thereby. (*Id*.)

Plaintiffs allege that Cary, through HP, perpetrated fraud upon them as follows. HP bought a number of houses in North Texas. Cary would then artificially inflate the value of a property by "creat[ing] market comparables," generating instant, and false, equity in that property. (*Id*.) Cary then recruited "investors" to whom he allegedly paid $5,000 in return for their personal credit information used to obtain a mortgage and in return for their agreement to buy the property, thereby enabling HP to create the look of a bona fide sale of the property. (*Id*.) HP also told the investors that it would manage their new properties. Defendants Ferwerda, Heublein, and St. Hill were among the investors. Because HP bought the necessary credit information from the investors, HP was able to construct the sham sales, consisting of HP as the "seller" and the investor as the "buyer." HP, as the seller, of course, would be paid the purchase price of the house from the mortgage proceeds, and the investor would be on the hook for making the mortgage payments. Cary promised the investor that HP would manage the property and locate a renter to generate a stream of income. As the property manager, HP was also to make the mortgage payments, but when HP stopped making the payments, the notes went into default and the houses were foreclosed. Each house, according to the

Plaintiffs, was burdened by a mortgage in the name of an investor, and neither Cary nor HP ever had any intention of either repaying the mortgages or selling the homes to the renters.

For each of the loans, HP contacted Pioneer Funding, a mortgage broker. (*Id*.) Pioneer, in turn, used Argent Mortgage Company to finance the "sale" of each house. Argent, as do many lenders, sold the notes on the secondary market to banks such as Wachovia and Wells Fargo. After some time, Argent noticed that many of the loans made through Pioneer Funding were troubling and investigated that broker. (*Id*.) The investigation revealed that more than a quarter of the loans made through Pioneer Funding were in default, and Argent decided it would no longer make notes through Pioneer.

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id*. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id*. at 247. If the

movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

### III. DISCUSSION AND ANALYSIS

The Plaintiffs have sued Argent on claims of fraud, wrongful foreclosure, and a suit to quiet title to the instant properties. The Plaintiffs' theory on the fraud claim was not that Argent made fraudulent representations. Rather, the Plaintiffs seek to connect HP's alleged fraud to Argent on theories of conspiracy and joint enterprise. In neither their Response nor their Sur-reply did the Plaintiffs contest Argent's Motion for Summary Judgment on the theory of conspiracy or the claims of wrongful foreclosure, or suit to quiet title. "In the event a party fails to oppose a motion in the manner prescribed herein, the court will assume that the party has no opposition." LOCAL RULE CV-7(d). Since the Plaintiffs have failed to oppose Argent's Motion on these grounds, the court will assume that the Plaintiffs have no opposition. The court finds that Argent's Motion is meritorious on these grounds and will grant summary judgment as to the theory of conspiracy and the claims for wrongful foreclosure and suit to quiet title.

The Plaintiffs initially argue that the Motion should be "stricken and/or unfiled" on two

grounds. (Pl.'s Resp. 2.) First, the Plaintiffs argue that Argent never filed an answer to their Second Amended Original Complaint. Argent argues that it was never served with that document and thus that any need to answer has not yet arisen. Whether Argent was served is irrelevant. Rule 15(a) states, in pertinent part, "[a] party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders." FED. R. CIV. P. 15(a). The Plaintiffs argue that a defendant must file an answer to an amended complaint. *Snyder v. Pasack Valley Hosp.*, 303 F.3d 271, 276 (3rd Cir. 2002) ("Under New Jersey procedural rules, as well as those in the federal system, a defendant is required to answer the amended complaint even if the new version does not change the charges against him."). It does not follow from the *Snyder* court's interpretation of Rule 15(a) that the district court cannot consider a motion for summary judgment in the absence of an answer to an amended complaint. In any event, the relevant portion of Rule 15(a) is subject to several interpretations, and the *Snyder* court's is one of them. The Plaintiffs cite no Fifth Circuit authority, and the court can find none, for the proposition that failure to respond to an amended complaint disallows a district court from considering a motion for summary judgment. Argent cites to the Second Amended Original Complaint in its Motion, so it clearly is aware that it was filed. Particularly, as in this case, where only a few words' variance separates the Second Amended Original Complaint from its predecessor and no prejudice to either party from the failure to answer can be divined, the court is unpersuaded by this argument propounded by the Plaintiffs. In the absence of Fifth Circuit authority to the contrary, the court is unconvinced that Argent's failure is fatal to its Motion.

The Plaintiffs also argue that the Motion filed by Argent should be set aside as not

conforming to the local rules because it contains a "Facts" section as opposed to the required "Statement of Material Facts" section. LOCAL RULE CV-56(a)(2). Again, the court can perceive no prejudice arising out of the omission of the words "Statement of Material." Thus, the court will continue its consideration of the Motion.

In order to connect the alleged underlying fraud to Argent, the Plaintiffs argue that Argent was involved with Cary and HP as part of a joint enterprise. Joint enterprise liability is a doctrine that allows liability to be imputed to a party based on a tort that it did not actually commit. *Texas Dep't. of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). It is not clear whether joint enterprise liability arises in one joint venturer based on the *intentional* tortious activity of another, such as fraud. In fact, the language of *Able* suggests that it does not. *Able*, 35 S.W.3d at 613 (stating that joint enterprise liability extends liability based on "*negligent* act[s]" of other parties) (emphasis added). Nevertheless, the Plaintiffs have not successfully demonstrated the elements of the doctrine as against Argent. Therefore, it is not necessary to consider whether there was, in fact, any underlying fraud. It will be assumed, without deciding, that the Plaintiffs were defrauded.

Joint enterprise liability arises when each of the following factors are established:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 526 (Tex. 2002). Because each prong must be established, the failure to demonstrate a single element results in the failure of a claim based on the doctrine of joint enterprise liability, even if each of the other three can be demonstrated. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995). In order to establish the fourth factor, a plaintiff must

make a showing that the purported joint venturer had "an authoritative voice or...some voice and right to be heard." *Able*, 35 S.W.3d at 614.

The Plaintiffs rely on the necessity of Argent's role in HP obtaining the fruits of the alleged fraud as evidence that Argent had "an equal right of control" in the purported joint enterprise. It strains the court to imagine how this fact establishes Argent's right of control in the fraud. That Argent was involved in the chain of distribution is merely evidence of just that and nothing more. Argent's designated agent testified at deposition that Argent had never directly done any business with either Michael Cary nor Harris Pauley. (Pl.'s Resp. Ex. M 53:14.) Rather than evincing any control by Argent over the activities of Cary or HP, the summary judgment evidence merely consists of indicia that Argent, as a mortgage lender, sought new business in order to make a profit. They processed applications submitted by HP through Pioneer and made loans based thereon. The evidence suggests that Argent itself was overextended on the basis of the alleged misinformation provided by HP through Pioneer. That Argent was involved in a chain of distribution that allegedly involved fraud does not automatically subject it to joint enterprise liability. In fact, for the court to impose joint enterprise liability on Argent on the basis of the evidence presented by the Plaintiffs, the court would have to be willing to impose liability on any actor in any chain of distribution in which tortious activity played a role. There is no indication in the precedents that joint enterprise liability has such far-reaching effect in Texas.

The Plaintiffs also try to impute liability to Argent by arguing that Argent negligently handled the HP loans. The Plaintiffs argue that Argent ignored some of its internal policies in the course of dealing with the loans. However, the Plaintiffs have not alleged a cause of action for negligence against Argent. Moreover, and more critically, the purportedly negligent acts are mere indications

that Argent was engaged in the lending industry and sought to foster relations with a new and lucrative client. Nothing indicates that Argent was capable of exercising "an authoritative voice" over the purported joint enterprise. *Able*, 35 S.W.3d at 614. As discussed above, Argent suspended the broker that submitted the HP loan applications once it became clear that the HP loans were questionable. Because the Plaintiffs have not identified any evidence on an element necessary to extend liability to Argent, there does not exist a genuine issue of material fact as to Argent. FED. R. CIV. P. 56(c). The Plaintiffs may very well have been wronged in a legally cognizable manner, but no showing has been made that Argent is responsible for any such wrong.

## IV.  CONCLUSION

Based on the foregoing, the court is of the opinion that Defendant Argent Mortgage Company's Motion for Summary Judgment should be, and hereby is, GRANTED.

IT IS SO ORDERED.

**SIGNED this the 5th day of December, 2007.**

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE